THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

ALI CHERAGHI,                   *

                             *

     Plaintiff,           *

                             *

        v.              *     Civil Action No. 8:11-cv-01505(AW)

                             *

MEDIMMUNE, LLC,        *

                             *

     Defendant.      *

                             *

**************************************************************************

**MEMORANDUM OPINION**

     Plaintiff Ali Cheraghi brings this action against Defendant MedImmune, LLC.  Cheraghi asserts employment discrimination claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Maryland Fair Employment Practices Act.  Presently pending before the Court is Defendant's Motion to Dismiss. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary.  Local R. 105.6 (D. Md. 2011).  For the reasons that follow, the Court **GRANTS** Defendant's Motion to Dismiss.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

     Cheraghi, an Iranian-born naturalized U.S. Citizen, began working for Medimmune, Inc.  in 1997 as a Facility Engineer and Facility Technician III.    On November 6, 2001, Cheraghi executed an Employee Agreement ("Agreement") with MedImmune, Inc. The Agreement contains an arbitration clause. The arbitration clause is broad and contains the following pertinent provisions:

> I understand and agree to have resolved by arbitration any and all disputes arising from or relating to my employment with the Company . . . my termination of such employment or post-employment issues with the Company. These include:

1

(A) claims relating to any discrimination on the basis of color, sex, religion, national origin, disability, retaliation, marital status, veteran status, sexual orientation or any other claim of employment discrimination under the . . . Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*); Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*); Article 49B of the Maryland Annotated Code; or any other federal, state or local prohibition against discrimination . . . ;

(C) claims for breach of an express or implied contract or tort claims.

Doc. 7.2

On June 13, 2007, AstraZeneca PLC ("AZ") acquired all of Medimmune, Inc.'s outstanding shares of stock.  Doc. 10-1 at 4–5. To reflect this change from a publicly traded company to a subsidiary, MedImmune, Inc. changed its name by deleting "Inc." and adding "LLC." *See id.* The merger between MedImmune, Inc. and AZ occurred subject to an Agreement and Plan of Merger ("Merger Agreement"). Agreement and Plan of Merger, SEC.gov, http://sec.gov/Archives/edgar/data/901832/000095010307001072/dp05422e_ex9902.htm (last visited Nov. 1, 2011). The Merger Agreement defines MedImmune, Inc. as the "Company." Agreement and Plan of Merger, 1, SEC.gov, http://sec.gov/Archives/edgar/data/901832/000095010307001072/dp05422e_ex9902.htm (last visited Nov. 1, 2011). The Merger Agreement also refers to the Company as the "Surviving Corporation." Agreement and Plan of Merger, § 3.01, SEC.gov, http://sec.gov/Archives/edgar/data/901832/000095010307001072/dp05422e_ex9902.htm (last visited Nov. 1, 2011). Section 3.01 also states that "the separate corporate existence of the Company with all its rights, privileges, and immunities, powers and franchises shall continue unaffected by the Merger." Agreement and Plan of Merger, § 3.01, SEC.gov, http://sec.gov/Archives/edgar/data/901832/000095010307001072/dp05422e_ex9902.htm (last visited Nov. 1, 2011). Furthermore, Section 8.04 provides that the "Surviving Corporation [must]

honor all Plans, compensation arrangements and agreements and employment, severance and termination plans and agreements in accordance with their terms as in effect immediately before" the Merger took effect. Agreement and Plan of Merger, § 8.04(a), SEC.gov, http://sec.gov/Archives/edgar/data/901832/000095010307001072/dp05422e_ex9902.htm (last visited Nov. 1, 2011).

On June 2, 2011, Cheraghi filed a Complaint asserting claims under Title VII and the ADA, along with state law claims under the Maryland Fair Employment Practices Act and for conversion. (Doc. 2.) On June 6, 2011, MedImmune, LLC filed a Motion to Dismiss on the ground that the Agreement binds Cheraghi to arbitration. (Doc. 7.)

## II.   STANDARD OF REVIEW

Preliminarily, the Court must address two issues. First, the Court must consider whether MedImmune, LLC  properly brought its Motion to Dismiss under Rule 12(b)(1). Second, the Court must address whether outright dismissal with prejudice is the appropriate outcome if the Court determines that the Agreement binds Cheraghi to arbitrate his claims.

## A.   Whether MedImmune Properly Brought its Motion to Dismiss under Rule 12(b)(1)

Generally, parties properly bring motions to dismiss in connection with a valid arbitration agreement under Rule 12(b)(6). *See, e.g., Moore v. Ferrellgas, Inc.*,  533 F. Supp.2d 740, 744 (W.D. Mich. 2008) (citing cases). This is because "the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction." *Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp.2d 74, 78 (D. Del. 2003); *see also Schwartz v. Coleman*, No. 87-2524, 1987 WL 38184, at *2 (4th Cir. Nov. 3, 1987). "It instead requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate."

*Liveware,* 252 F. Supp.2d at 78–79 (citing *Nationwide Ins. Co. of Col., Ohio v. Patterson*, 953 F.2d 44, 45 (3d Cir. 1991); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3ed. Westlaw 2011). Therefore, as an initial matter, the Court deems it proper to treat MedImmune, LLC's Motion to Dismiss under 12(b)(1) as a motion to dismiss under 12(b)(6) even though some courts "have allowed parties to receive the equivalent remedy in a Rule 12(b)(1) motion." *Compare, e.g.*, *Liveware,* 252 F. Supp.2d at 78, *with, e.g.*, *Moore*, 533 F. Supp.2d at 744–45.

This decision does not end the Court's inquiry regarding the proper standard of review. In holding that the Agreement binds Cheraghi to arbitration, the Court considers documentation outside of the Complaint. Therefore, Rule 12(d) dictates that the Court treat MedIummne, LLC's Motion to Dismiss as one for summary judgment. Fed.R.Civ.P. 12(d); *see also Nationwide*, 953 F.2d at 45 (holding that Rule 56 governs the dismissal of actions that an arbitration agreement covers when the court considers matters beyond the pleadings). In such cases, courts must give the nonmoving party a "reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). Consistent with Rule 12(d)'s dictates, this Court has conducted a two-step inquiry to determine whether the nonmovant has had such a "reasonable opportunity." *Tasciyan v. Med. Numerics*, Civil Action No. 11–1467 AW, 2011 WL 5119465, at *4 (D. Md. Oct. 28, 2011); *LaPier v. Prince George's County, Md.*, Civil Action No. 10–CV–2851 AW, 2011 WL 4501372, at *6 (D. Md. Sep. 27, 2011) The *LaPier* court described this test thusly:

> The term "reasonable opportunity" entails two basic requirements. One, the defendant must have some indication that the court is treating the motion as one for summary judgment. *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citations omitted). A defendant's awareness that material outside the pleadings is pending before the court satisfies this notice requirement. *See id.* Two, courts must satisfy themselves that the nonmoving party has had a fair opportunity to discover information essential to oppose the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (citing Fed. R. Civ. P. 56(f)).

*LaPier*, 2011 WL 4501372, at *6.

The facts of this case satisfy this test. As for notice, Cheraghi responded to a Motion to Dismiss to which MedImmune, LLC attached the Agreement. As for overall fairness, there is no discoverable information that Cheraghi could adduce that would help him withstand MedImmune, LLC's Motion to Dismiss. Furthermore, except for the Agreement, the external documents on which the Court relies have been filed with the SEC and are publicly available. *See* Doc. 10 at 2 ns. 1–3; *see also Haley v. Corcoran*, 659 F. Supp. 2d 714, 722 n.4 (D. Md. 2009).  Although the Agreement is not publicly available, it is essentially integral to the Complaint. *Cf. Westmoreland v. Prince George's County, Md.*, Civil Action No. 09–CV–2453 AW, 2011 WL 3880422, at *2 n.1 (D. Md. 2011). Therefore, the Court likely could decide Cheragi's Motion to Dismiss without converting it into a motion for summary judgment. All the same, the Court treats it as a motion for summary judgment out of an abundance of caution.

**B.      Whether Outright Dismissal with Prejudice is the Appropriate Outcome if the Court  Determines that the Arbitration Clause Binds Cheraghi**

The Federal Arbitration Act ("FAA"), 9 U.S.C.A §§ 1–14, 201–08, contains provisions whose literal reading suggests that courts must order parties to arbitrate their disputes when it determines that an arbitration agreement binds the parties. *See* 9 U.S.C.A. § 4. The relevant part of Section 4 reads:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . .  for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, **the court shall make an order directing the parties to proceed to arbitration** in accordance with the terms of the agreement.

*Id.* (emphasis added); *cf.* 9 U.S.C.A. § 3 (providing that district courts shall stay proceedings and refer the case to arbitration pending the outcome of arbitration proceedings where the court determines the agreement to bind the parties and a party moves the court to for such a disposition). Consistent with these provisions, the United States Supreme Court has written that "the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Nevertheless, the Fourth Circuit has held that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).  When all the issues that a suit presents are arbitrable, outright dismissal only requires that the moving party make clear that it is "seeking enforcement of the arbitration clause of the Agreement." *Id.* This rule reflects the policy that "retaining jurisdiction and staying the action will serve no purpose" where "all issues raised in this action are arbitrable and must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

The Court can readily reconcile these authorities. Cheraghi does not argue that the arbitration agreement fails to cover the issues that his lawsuit presents. Instead, he basically argues that he never entered into an agreement with MedImmune, LLC. As the later analysis shows, this argument lacks merit. Also, MedImmune, LLC made clear that it is seeking to enforce the agreement when it moved to dismiss. Therefore, consistent with the foregoing authorities, the Court dismisses Cheraghi's claim with prejudice and hereby orders the Parties to arbitrate their dispute.

**C.      Standard of Review for Summary Judgment**

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255).  To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III.  LEGAL ANALYSIS

The FAA embodies "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir. 1997).  Two key factors driving this policy are the affordability and expediency that arbitration offers in lieu of litigation. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122 (2001).  This liberal policy requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  In accordance with this mandate, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.  Likewise, any ambiguity in employment contracts is interpreted in favor of arbitration. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Thus, it is well-settled that "the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

"[A] litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). In this case, Cheraghi contests only the second element, namely, "the existence of a binding contract to arbitrate." *Id.*

"Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Therefore, the Court initially turns to Maryland law to determine the enforceability of the purported

arbitration agreement between the Parties. *See id.* The Court then turns to an instructive U.S. Supreme Court case because, despite federal courts' deference to state law on the question of contract formation, the FAA seeks to "create a body of federal substantive law of arbitrability." Moses, 460 U.S. at 24 (citing *Paint Corp. v. Flood & Conklin Mfg. Corp.*, 388 U.S. 395 (1967)).

Parties generally may assign their beneficial rights under a contract. *Macke Co. v. Pizza of Gaithersburg, Inc.*, 270 A.2d 645, 646 (Md. 1970); *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 128 A. 280, 283 (Md. 1925). As a corollary, a successor-in-interest may enforce an arbitration agreement. *See Crown Oil & Wax Co. of De., Inc. v. Glen Constr. Co. of Va.*, 578 A.2d 1184, 1192–95 (Md. 1990). In *Crown Oil*, the Court of Appeals of Maryland addressed "whether there exist[ed] an agreement to arbitrate" between the parties. *Id.* at 1189. Crown Oil ("Crown") entered into a construction contract with Glen Construction Co. ("Glen"). *Id.* at 1186–87. The construction contract contained three relevant provisions: (1) a broad arbitration clause; (2) a successors-and-assigns provision; and (3) an anti-assignment clause. *See id.* at 1188, 1192–93. The construction contract was integral to a series of transactions by which Frederick Hotel Limited Partnership ("FHLP") sought to erect a hotel on undeveloped commercial realty. *See id.* at 1185– 86. At some point, "FHLP took Crown Inc.'s place by agreeing that the construction costs would be its sole responsibility." *Id.* at 1194.

Crown eventually notified Glen that it planned to terminate the construction contract, whereupon Glen demanded arbitration. *Id.* at 1187. Crown answered and counterclaimed in arbitration on behalf of both it and FHLP. *Id.* at 1188. In response, Glen sued Crown and FHLP in state court and sought to restrain FHLP "from pursuing in arbitration any claim by or on behalf of FHLP." *Id.* (footnote and internal quotations omitted). Glen argued that FLHP was not a party to the construction contract and that, therefore, a binding arbitration agreement did not exist between

it and FLHP. *See id.*

The *Crown* court rejected this argument. *See id.* at 1192–95. The Court determined that, at a minimum, Crown equitably assigned its benefits under the construction contract to FHLP considering the course of the transaction. *See id.* at 1192–93.  The *Crown* court then determined that the contract's anti-assignment clause failed to vitiate the implied assignment, partly because the assignment failed to impair the interests of Glen under the contract.  *See id.*  Furthermore, the *Crown* court emphasized that the parties' dispute concerned the arbitrability of a contract. *Id.* at 1194.  In such cases, it "is sufficient that FHLP bec[a]me the successor of Crown Inc." *Id.* Accordingly, the Court held that FHLP's claims against Glenn were arbitrable. *Id.* at 1195

The arbitrability of collective bargaining agreements is also instructive. The United States Supreme Court has considered whether the arbitration provisions in a collective bargaining agreement apply to a corporation that succeeds another corporation by merger. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–51 (1964). In *John Wiley*, a labor union entered into a collective bargaining agreement with corporation called Interscience Publishers, Inc. *Id.* at 544. "The agreement did not contain an express provision making it binding on successors of Interscience." *Id.* Sometime later, "Interscience merged with John Wiley & Sons, Inc. ("Wiley") and ceased to do business as a separate entity." *Id.* at 545. The union and Wiley failed to resolve an ongoing disagreement regarding the effect of the merger and the union commenced an action to compel arbitration under § 301 of the Labor Management Relations Act ("LMRA"). *See id.* at 544–46 (citing LMRA, 29 U.S.C.A. § 185). Wiley argued that the collective bargained agreement failed to bind it because Wiley did not sign the agreement. *Id.* at 547.  The *Wiley* court rebuffed this argument and held that the union could enforce the collective bargaining agreement's arbitration provisions against Wiley. *Id.* at 550. In so holding, the *Wiley* court recognized the "central role of

arbitration in effectuating national labor policy." *Id.* at 549. Specifically, the Court raised the specter of "industrial strife" resulting from "a change in the corporate structure or ownership of a business enterprise [having] the automatic consequence of removing a duty to arbitrate previously established." *Id.* at 549.  Granted, the *Wiley* court suggested that the duty to arbitrate may not apply to a successor corporation in all cases, such as when the predecessor and successor "lack of any substantial continuity of identity." *Id.* at 551. However, the *Wiley* court found no such lack of identity on the facts before it and, hence, ruled for the union. *See id.* at 550–51.

The facts in this case resemble the facts in *Crown Oil*. In *Crown Oil*, the plaintiff Glen signed an arbitration agreement with particular corporation (Crown). Crown then assigned its rights under the agreement to FHLP. Here, Cheraghi signed an arbitration agreement with MedImmune, Inc. As memorialized in the Merger Agreement, MedImmune, LLC assumed the rights that MedImmune, Inc. enjoyed before the merger, including those relating to employment plans.  The simple fact that MedImmune, Inc. changed the suffix after its name to reflect its transition to a wholly owned subsidiary fails to gainsay the Merger Agreement's express language.  Admittedly, unlike the construction contract in *Crown Oil*, the Employee Agreement has no successors-and-assigns clause. This distinction is also insignificant. Notably, the construction contract had an anti-assignment clause with whose dictates Crown failed to fully comply.  Nevertheless, the Court declined to enforce the anti-assignment clause because the assignment failed to impair the interests of Glen under the contract.  Here, equally, allowing MedImmune, LLC to enforce the arbitration agreement fails to impair Cheraghi's interests under the Employee Agreement. In essence, the only thing that has changed is the suffix after MedImmune, Inc.'s name; everything else is the same.

*Wiley* also supports enforcing the arbitration agreement at hand. In *Wiley*, the U.S. Supreme Court held that the collective bargaining agreement bound Wiley even though Wiley did not sign it.

Here, Cheraghi actually signed the arbitration agreement. Furthermore, policy considerations akin to those that the *Wiley* court raised are present. Although refusing to enforce arbitration agreements in the employment context may not engender full-scale "industrial strife," it does portend freeing employees from their obligation to arbitrate their disputes whenever their employers merge with other companies. This outcome could discourage commercial activity and result in an unearned windfall for the employee. Therefore, although *Wiley* involved a labor dispute under the LMRA, the notions that it advances apply to this case.

The foregoing analysis compels the conclusion that MedImmune, LLC may enforce the arbitration agreement against Cheraghi. In short, the Parties do not dispute the material facts, and the relevant authorities entitle MedImmune, LLC to judgment as a matter of law. Accordingly, the Court treats MedImmune, LLC's Motion to Dismiss as one for summary judgment and hereby grants it.

Cheraghi's two counterarguments are spurious. First, Cheraghi contends that the first paragraph of the Agreement states that it applies to subsidiaries but not to successors. This argument reflects a misreading of the paragraph. It states: "In consideration of my employment by MedImmune, Inc., or one of its subsidiaries (collectively, the "Company") and the compensation paid to me by the Company, I hereby agree that." Doc. 7-2 at 1. This paragraph establishes only that the Agreement is between Cheraghi and "MedImmune, Inc. or one of its subsidiaries." Thus, it has nothing to do with the question whether MedImmune, LLC, as successor by merger to MedImmune, Inc., may enforce the Agreement. Second, Cheraghi argues that a Medimmune, Inc. is a dissolved corporation and, hence, lacks standing to prosecute or defend a legal action. The obvious flaw in this argument is that MedImmune, LLC, not MedImmune, Inc., is pursuing the action.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. 7)

*with prejudice* and **ORDERS** the Parties to arbitrate their dispute.  A separate Order will follow.


| November 1, 2011 | | /s/ |
| --- | --- | --- |
| Date | | Alexander Williams, Jr. |
| | | United States District Judge |

-

13